# Penrose *versus* The Erie Canal Company.

1. The Act of April 9th 1850, § 1, to regulate sequestrations in case of the Erie Canal Company, is unconstitutional.

2. Alterations may be made in remedies, though the creditor may thereby be hindered and delayed, if they do not substantially deprive him of the right he had when the contract was made.

3. A state legislature cannot enact that a debtor's property shall not be taken to satisfy his debt, if it was so liable when the debt was incurred.

October 23d 1867. Before STRONG, READ and AGNEW, JJ. THOMPSON, J., did not sit, having been of counsel in the case. WOODWARD, C. J., absent.

Appeal from the decree of the Court of Common Pleas of *Erie county :* No. 69, to October and November Term 1867.

From the 1st of January 1846 to the 1st of January 1848, The Erie Canal Company became indebted to Charles B. Penrose on a number of interest certificates amounting in the whole to $2303. He brought suit for their recovery, and obtained judgment on the

5th of March 1857 for $2947.84. Mr. Penrose having died, his executrix, Valeria F. Penrose, was, on the 13th February 1860, substituted. She issued a fi. fa. to August Term 1864, which was returned " *Nulla bona.*"

On the 27th of January 1867, the executrix petitioned the Court of Common Pleas, setting out these facts, and prayed the court " to award a writ to sequester the goods, chattels and credits, rents, issues and profits, tolls and receipts from the business, property and estate of said defendant corporation."

On the 27th of February 1867, the defendant filed the following answer :—

" The petition does not set forth that the said corporation is guilty of mismanagement, misapplication of its funds or wilful delay in the discharging its legal liabilities or either of them ; nor is the said petition of the plaintiff verified on oath, charging such mismanagement, misapplication or delay specifically as required by the 1st section of the Act of Assembly, approved the 9th day of April 1850, and therefore prays judgment of the court, if the plaintiff is entitled to sequestration of the goods, chattels, credits, rents, issues and profits, tolls and receipts from the business, property and estate of the defendant under said petition."

The court dismissed the plaintiff's petition at her costs.

She appealed to the Supreme Court, and assigned the decree of dismissal for error.

The 1st section of the Act of April 9th 1850, referred to in the defendant's answer, is found in Pamph. L. p. 437, and is as follows :—

" That hereafter on the return of an execution unsatisfied against the Erie Canal Company, under the provisions of the 73d section of the Act of 16th June 1836, regulating executions, it *shall not be lawful* for the court when such return is made to grant a writ of sequestration and to appoint a sequestrator, except upon the judgment and decree of the same court on hearing that said corporation is guilty of mismanagement, misapplication of its funds or wilful delay in discharging its legal liabilities, that such hearing shall only be ordered and had on the written application of the plaintiff in such execution verified on oath charging such mismanagement, misapplication or delay specifically, and on such reasonable notice served on the corporation as the court shall direct : *Provided,* That this act shall not apply to judgments for repairs."

B. *Grant,* for appellant, cited Acts of April 9th 1850, *supra ;* June 16th 1836, §§ 73, 74, 75, Purd. 200, pl. 45, 46, 47, Pamph. L. 775 ; Constitution of Pennsylvania, Art. 9, § 11 ; Menges *v.* Dentler, 9 Casey 495 ; Reed *v.* Penrose, 2 Grant 505 ; Quackenbush *v.* Danks, 1 Denio 131 ; Bronson *v.* Kinzie, 1 How. 311 ;

McCracken v. Hayward, 2 Id. 608 ; Bunn v. Gorgas, 5 Wright
441 ; Billmeyer v. Evans, 4 Id. 324.

*J. C. Marshall* and *D. Derrickson*, for appellee, cited Acts of
April 9th 1850, *supra ;* June 16th 1836, *Execution*, § 4, Purd.
431, pl. 4, Pamph. L. 762 ; April 18th 1861, § 4, Purd. 735, pl.
167, Pamph. L. 409 ; Britenbach v. Bush, 8 Wright 313 ; Coxe
v. Martin, Id. 322 ; June 16th 1836, *Sequestration*, Purd. 200,
&c. ; Satterlee v. Matthewson, 16 S. & R. 169 ; Watson v. Mer-
cer, 1 Watts 330, 344 ; Evans v. Montgomery, 4 W. & S. 219.

The opinion of the court was delivered, January 16th 1868, by
STRONG, J.—This appeal calls in question the constitutional
validity of the 1st section of an Act of Assembly passed the 9th
day of April 1850, and entitled " An act to limit and regulate
sequestrations in case of the Erie Canal Company." The plain-
tiff has a judgment against the company founded on a debt con-
tracted in the years 1846 and 1847, and due before the passage
of the act to which reference has been made. Having caused an
execution to be issued to which the sheriff returned " *nulla bona,*"
she would be entitled, under the Act of 1836 relating to execu-
tions, to sequestration of the property of the defendants, of the
tolls and receipts of their canal, and of all their goods, chattels
and credits, rents, issues and profits, were it not for a supposed
change in the law, made by the Act of 1850. The question,
therefore, is, whether that act is of force or whether it is invalid
as a violation of the provision of the Federal Constitution that
denies to the states power to make a law impairing the obligation
of contracts.

In construing this provision of the Constitution the Supreme
Court of the United States early made a distinction between the
obligation of a contract and the legal remedy for its breach, hold-
ing that while the obligation may not be impaired the remedy to
enforce it may be changed and even partially taken away. It is
doubtless true that the Constitution was never intended to stereo-
type the laws of the different states which at the time of its adop-
tion provided remedies for the enforcement of contracts, or to
deprive the states of the power to substitute others in place of
those then existing. And yet if by the obligation of a contract
is meant its legal force at the time it is entered into, it is difficult
to see how a remedy can be diminished or partially taken away,
and still the obligation remain unimpaired unless another equally
efficient is provided in its stead. An obligation without any means
of enforcing it certainly is not a legal one, and just in proportion
as the means of compelling the performance of a contract are
taken away, it would seem must its legal effect be diminished.
It is, however, settled that alterations may be made in the reme-

[Penrose v. Erie Canal Co.]

dies provided by law, though the creditor may thereby be hindered and delayed, if they do not substantially deprive him of the right he had when the contract was made and assured to him by it.

It is upon this principle that stay laws, for a reasonable time, are held constitutional, though a law providing for an indefinite stay is not: Bunn & Raiguel v. Gorgas, 5 Wright 441. So it has been held that exemption of the person of a debtor from arrest or imprisonment is permissible as only acting upon the remedy, even when allowed by law after a contract made, but the exemption of the property of a debtor from attachment or execution, though apparently equally a modification of remedy, is prohibited by the Constitution. Admitting that these distinctions are not clearly defined in reason, we must accept them as made.

Certain it is that it is not competent for a state legislature to throw a barrier around the property of the debtor, and enact that it shall not be taken to satisfy his debt, if it was liable to such seizure and appropriation when the debt was incurred. A legal obligation can have no existence where both the person and property of the debtor are placed by law beyond the reach of the creditor.

If now we examine what rights the contract in this case gave when it was made, or, which is the same thing, what was the extent of the legal obligation assumed by the defendants, and then inquire into the meaning of the 1st section of the Act of 1850, we may determine without difficulty whether the enactment is prohibited by the Constitution. To ascertain the extent of the creditor's rights we must look beyond the words of the contract. We must look at the law as it was at the time, for that entered into the contract, and was itself the measure of the defendant's obligation. By the Act of 1836, relating to executions, a creditor by contract of a canal company after having obtained judgment, and after a return of *nulla bona* to an execution issued thereon, was entitled to have the tolls, rents, issues and profits of the company, together with all its rights and credits, seized and applied to the payment of his claim rateably with the claims of others.

This could be effected by a writ of sequestration, and it was the only means of obtaining satisfaction of the debt if an execution proved fruitless. This right to sequestration was not dependent at all upon the manner in which the canal company might manage its property. It was absolute. Indeed, it may well be supposed that without it credit would not have been given in many cases. The tolls, rents, issues and profits are the principal security of a creditor of such a corporation. Neither the canal itself, nor the franchise of the company, could be sold, except at

6 P. F. SMITH—4

[Penrose *v.* Erie Canal Co.]

the suit of mortgagees; and if the tolls and profits could not have been seized, the creditor would have been remediless.

Sequestration was therefore a substantial right, and assured by the contract. I do not say that some other process might not have been substituted for it—some process that would have given the creditor equal facilities for appropriation of the tolls, rents, credits, &c., of the company; but the right to have that property appropriated in some way to the satisfaction of the debt was undoubtedly assured by the contract. Such, then, were the rights which the plaintiff had when the Act of 1850 was passed. By that it was enacted that it should not be lawful to grant a writ of sequestration and to appoint a sequestrator when a return of *nulla bona* had been made to an execution against the Erie Canal Company, except upon the judgment and decree of the court on hearing that the corporation is guilty of mismanagement, misapplication of funds or wilful delay in discharging its legal liabilities. The act provided no substitute for sequestration in those cases where it would have been allowable before its passage, but not afterwards. It is remarkable that it applies, not to corporations generally, but singly to these defendants. It attempts to establish a rule for them alone. It gives them an exemption denied to all other canal companies or corporations. And it is plain that it may amount to a complete exemption of all their property from ever being applied in any degree to the satisfaction of the debt due the plaintiff. The company may never be guilty of mismanagement. It ought to be presumed they will not. The corporation may never misapply its funds. It may devote them exclusively to the payment of other debts. It may never be guilty of wilful delay in discharging its legal liabilities, and therefore, if this enactment is valid, and there is no misconduct of the corporation, its property—the only means it has for satisfying its debts—is for ever withdrawn from the reach of the plaintiff. Under the shelter of this act, the tolls are no longer a security, absolute and unconditional. It is impossible to say that this is not impairing the obligation of a contract, in view of the construction given to the constitutional inhibition by the Supreme Court of the United States, and especially with McCracken *v.* Haywood, 2 How. 608, before us. No one would contend that a law exempting all a natural person's property from seizure for satisfaction of his debts until he had been proved guilty of mismanaging it, or of wilful delay or of misapplication of his funds, could stand an hour, except as applicable to contracts made after its enactments. The creditor's right is not dependent upon the conduct of the debtor. And is a different rule to be applied to cases where a corporation is a contracting party?

We are constrained, then, to hold that the Act of 1850 is

[Penrose v. Erie Canal Co.]

invalid, because prohibited by the Federal Constitution. The order of the Common Pleas dismissing the petition of the plaintiff must be reversed.

> The decree of the Court of Common Pleas, dismissing the petition of the plaintiff, is reversed, and the record is remitted with instructions to award a writ of sequestration.