## Birmingham Fire Insurance Co. *versus* Commonwealth ex rel. Kuehneisen.

1. A mandamus for the transfer of stock will not be granted where the relator has an adequate remedy in an action on the case for damages.

2. If the courts were inclined to enlarge the remedy by mandamus, it will not be done in a case where the right is disputed.

November 7th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1879, No. 254.

This was a petition for a mandamus by the Commonwealth *ex relatione* Adolph Kuehneisen against William Ruske, Secretary of the Birmingham Fire Insurance Company, to compel the transfer on the stock books of said company of ten shares of stock alleged to have been purchased by relator at sheriff's sale.

The relator obtained a judgment against Louis Kuehneisen, on which a fi. fa. was issued, returnable to first Monday of April, and placed in the sheriff's hands January 21st 1878. In pursuance of the fi. fa., the sheriff levied upon and sold some personal property, on the 31st of the same month, but the proceeds were not sufficient to satisfy the writ. He then, on the 12th of February, in pursuance of the same writ, levied upon ten shares of stock in the Birmingham Fire Insurance Company, standing in the name of the defendant, Louis Kuehneisen, and sold the same to the plaintiff on the 20th of February. He executed and delivered a bill of sale of the stock to the plaintiff, who, on the 21st March presented the same to the insurance company, and demanded of the secretary, William Ruske, a transfer of the stock to him on the books of the company, which was refused.

[Birmingham Fire Ins. Co. v. Commonwealth.]

The answer admitted these facts, but denied the plaintiff's right to a mandamus: (1) because the secretary had no right to transfer the stock, and, (2), a sale of the stock to another party.   It averred also that on a judgment of the Birmingham Fire Insurance Company against F. Kohne and Louis Kuehneisen, for the use of Charles Melling, an execution-attachment was issued January 23d 1878, and served the same day on William Ruske, Secretary of the Birmingham Fire Insurance Company, attaching the said ten shares of stock standing in the name of Louis Kuehneisen.   Interrogatories were served upon the secretary on the 12th February 1878, which he answered on the 18th, and admitted that "the said Louis Kuehneisen, one of the defendants, is the owner of ten shares of stock in the Birmingham Fire Insurance Company, unattached, of the par value of $50 per share, of which amount $35 per share has been paid, and said stock, as appears by our books, stands in his name."   On this answer judgment was entered against the garnishee (the Birmingham Fire Insurance Company) on the 16th March 1878, directing a sale of the stock, on which execution was issued and the stock sold April 10th 1878, to Charles Melling.

The court, White, J., in an opinion, inter alia, said:

" The question is: Which purchaser is entitled to the stock ?

Adolph Kuehneisen's execution was in the sheriff's hands January 21st 1878, two days before the execution-attachment of Charles Melling was issued; but the attachment was served upon the Fire Insurance Company on the 23d January, and the *levy* upon the stock under Kuehneisen's fi. fa. was not made until the 12th of February.   The sale on the fi. fa. was on the 20th February, and on the judgment against the garnishee on 10th April.

" If the lien of the fi. fa. on the stock dates from the time it was placed in the sheriff's hands, it has priority over the execution-attachment; if only from the date of the levy, it is subsequent.

" At common law a fi. fa. was a lien upon the goods and chattels of the defendant from the *teste* of the writ, even before delivery to the sheriff.   But in this state it has always been a lien from the time of its delivery to the sheriff.   Stock in a body corporate, however, could not be levied upon and sold on a fi. fa. until after the passage of the Act of 29th March 1819.   That act expressly provided that 'the stock of any body corporate owned by any individual or individuals * * * in his or her * * * own name, shall be liable to be taken in execution and sold, in the same manner that goods and chattels are liable in law to be so taken and sold.'

" The sheriff cannot under a junior execution levy upon and sell goods and chattels which he may not have levied upon under a former execution, and apply the proceeds to the junior execution, even if the property had come into possession of the defendant after the first execution had been issued.   He is bound to sell under all the writs in his hands and apply the proceeds to the executions

[Birmingham Fire Ins. Co. v. Commonwealth]

according to their priorities in time: Duncan v. McCumber, 10 Watts 212; Earl's Appeal, 1 Harris 485.

"There is no good reason why a distinction should be made between stock liable to be seized and sold on a fi. fa. and goods and chattels; and the act seems to place it on the same footing. It 'shall be *liable to be taken* in execution and sold *in the same manner* that goods and chattels *are liable in law* to be so taken and sold,' are the words of the statute. They are liable to be taken and sold from the time the writ is placed in the hands of the sheriff; in fact they are, in law, taken and seized from that date, without a levy: Watmough v. Francis, 7 Barr 206; Wilson, Seiger & Co.'s Appeal, 1 Harris 429; Schuylkill County's Appeal, 6 Casey 358.

In this case there is no controversy between the sheriff or his purchaser and an innocent purchaser before a levy; nor are there any intervening equities. Both claimants are purchasers at sheriff's sale. The garnishee is a mere stakeholder, and not liable over to either party. The relator had the first execution and is the purchaser at the first sale. We think he is entitled to the stock.

"But the mandamus should not issue against the secretary alone. The corporation is the real party to be made defendant, and against whom the mandamus should be directed, including the secretary, however, if he is the proper officer to make the transfer.

"Although the relator's title is by virtue of the sheriff's sale, yet he has a right to have the stock transferred in his name.

"The stock was sold, under the act, subject to any debts due by Louis Kuehneisen to the corporation, and these rights, if any exist, should be protected in the transfer.

"The counsel of the relator will take such further steps as may be necessary, under this opinion, to obtain a peremptory mandamus."

In a supplemental opinion the court said:

"The opinion of the court filed March 7th 1879, was in favor of the relator, for the reasons then given. In pursuance of the suggestion then made, the Birmingham Fire Insurance Company has been made a defendant also, and brought into court. An answer has been filed by said company. It sets up substantially the same facts as in the answer of the secretary, upon which the court have already passed. But it is now averred that the stock has been transferred to the purchaser under the attachment-execution, and is not under the control of the company. But no date is given. And from the former answer of the secretary, it is manifest the transfer has been made since that answer was filed, and in defiance of these proceedings.

"It is, therefore, ordered that a peremptory mandamus issue as prayed for and in accordance with the opinion of this court filed March 7th 1879."

The company took this writ and alleged that the court erred in ruling:

1st. That the relator had the first execution and is the purchaser at the first sale. We think he is entitled to the stock. 2d. In ordering a peremptory mandamus to issue. 3d. In ruling that although the relator's title is by virtue of the sheriff's sale, yet he has a right to have the stock transferred in his name. 4th. In not refusing to issue the writ of mandamus in this case.

*Robb & Fitzsimmons,* for plaintiff in error.—The second section of the Act of March 29th 1819, 7 Sm. L. 217, does not provide for making an execution a lien upon stock of a corporation from the time it goes into the hands of the sheriff. Stock can only be taken in execution by a levy. The statutory or common-law lien of an execution, where no levy had been made upon the goods and chattels of the defendant, was for the purpose of preventing collusive sales of personal property: Kelby v. Haggin, 3 J. J. Marshall 213; Tabb v. Harris, 4 Bibb 29. The relator lost his lien upon the stock, by causing the levy to be made upon the personal goods in the store: Walpole v. Ink, 9 Ohio 142; Hermon on Executions 271, 277.

A prior lien or the first levy made gives a prior claim, which is entitled to prior satisfaction out of the fund to which it attaches: Wylie v. Hyde, 13 Johns. 249; Galbraith v. Fisher, 10 Harris 406; Becker v. Torrence, 31 N. Y. 631; Peck v. Robinson, 3 Head 438; McClelland v. Slingluff, 7 W. & S. 134.

If, either by mistake or design, the sheriff *levy* goods in execution by virtue of the writ last delivered, and make sale of them, the property in the goods is transferred by the sale, and the party cannot seize them by virtue of the writ first delivered, but he may have his remedy against the sheriff: Watson on Sheriffs 176; Watmough v. Francis, 7 Barr 214; Hermon on Executions, sect. 180, p. 262; Marshall v. McLean, 3 G. Greene 363; Peck v. Tiffany, 2 N. Y. 451; Duncan v. McCumber, 10 Watts 216; Commonwealth v. Contner, 6 Harris 439.

When the sheriff sold the goods by virtue of the writ last delivered, the property of the goods was bound by the sale, and could not be seized under the first writ: Smallcomb v. Buckingham, 1 Lord Raym. 251; 1 Salk. 320; Payne v. Drewe, 4 East 523; Million v. Commonwealth, for use, 1 B. Mon. 310; Jones v. Atherton, 7 Taunt. 56; Schuylkill County's Appeal, 6 Casey 358.

The seizure or levy by attachment, as in this case, bound the said stock from the time of actual seizure, there being no levy on the same under the execution until afterwards; and even a sale under the execution would not affect the title to the stock, although the prior execution may be entitled to the proceeds of the sale:

[Birmingham Fire Ins. Co. *v.* Commonwealth.]

Peck *v.* Webber, 7 How. (Miss.) 658; Smith *v.* Bradstreet, 16 Pick. 264; Van Loan *v.* Kline, 10 Johns. 129; Davenport *v.* Lacon, 17 Conn. 278; Hermon on Executions, sect. 180, p. 262 and notes.

The relator is not entitled to relief in this proceeding. This is not a matter of public concern, and there is no need of the extraordinary remedy by mandamus: Shipley *v.* Mechanics' Bank, 10 Johns. R. 484; Ex parte Fireman's Insurance Co., 6 Hill 243; State *v.* Boonefeld, 46 Mo. 155; Baker *v.* Marshall, 15 Minn. 177; Kimball *v.* Union Water Co., 44 Cal. 173; King *v.* Bank of England, Doug. 524.

*Thomas H. Davis*, for defendants in error.—Shares of stock in incorporated companies standing in the name of debtor upon the books of the company, may be sold on a writ of fi. fa.: Lex *v.* Potter, 4 Harris 295; Weaver *v.* Railroad, 14 Wright 314. It is difficult to see how any well-founded distinction can be created between such stock and other personal property, usually denominated "goods and chattels."

A fi. fa. binds all the defendant's property in the bailiwick, from the time it is put into the sheriff's hand, and binds the property whether a levy be made or not. It is urged, that by specific directions of the relator a levy was made, first upon the personal property of the judgment debtor at his store, on the 21st day of January, and that subsequently the seizure upon the stock in question was made; and that consequently, there was a temporary suspension of the lien of the execution upon the stock, and hence it was postponed to the lien of the attachment which was served in the interim.

The proposition is predicated upon an incorrect statement of facts. It does not appear from the record in this case, that a levy was made on the property of Louis Kuehneisen, on the 21st day of January 1878, but rather on the 24th of said month; nor does it appear from the recited facts in this case, that specific directions were given the sheriff as to what property should be levied upon, but simply, that the goods in the store were sold by the sheriff on the 31st day of January 1878; and that on February 12th following, in pursuance of the same writ, the stock in question was seized at the office of the Insurance Company, and sold on the 20th of February.

If neither the judgment nor sale was fraudulent in fact, the latter gave a good title to the purchaser; and property so sold cannot be followed, but resort must be had to the fund produced by the sale: Loucheim Bros. *v.* Henezey, Administrator, 12 P. F. Smith 498.

Where the duty is incumbent upon a corporation to enter upon the register of the corporation the names of all the owners of its capital stock, this duty will be enforced by mandamus: Norris *v.*

[Birmingham Fire Ins. Co. v. Commonwealth.]

Irish Land Company, 8 El. & Bl. 512; Act of April 2d 1856, sect. 1; Act of May 17th 1871, Pamph. L. 891.

Mr. Justice TRUNKEY delivered the opinion of the court, November 17th 1879.

At the threshold the relator is met with the objection that mandamus will not lie for the reason that, even if his right to the stock be clear and the respondents have wrongfully refused to make the transfer, he has an adequate remedy in an action on the case for damages.

A mandamus, though a prerogative writ and demandable of right in a proper case, will be granted only in extraordinary cases, where there would otherwise be a failure of justice. We have used the mandamus only as a process in the last resort; never where there was a specific remedy. Thus it was refused in The Commonwealth v. Rosseter, 2 Binn. 362, where the object was to restore the relator to a pew in an incorporated church, because he had a remedy by action for the disturbance: Drexel v. Man, 6 W. & S. 386; Reading v. Commonwealth, 1 Jones 196. In Ex parte Fireman's Ins. Co., 6 Hill 243, where certificates of bank stock had been assigned to the relator, and, on application, the bank had refused to make the transfer, it was ruled that, "Where a corporation improperly refuses to transfer stock, the party injured has an ample though not a specific remedy by action; and for that reason a mandamus will not lie." The same doctrine had been held in Shipley v. Mechanics' Bank, 10 Johns. 484, where the court, on refusing the writ, remarked that it might as well be allowed in every case where trover would lie. To same effect are Kimball v. Union Water Co., 44 Cal. 173, and Baker v. Marshall et al., 15 Minn. 177. Norris v. Irish Land Co., 8 E. & B. 512, perhaps goes further than the decisions in this country, for, in England, the inclination of the courts has been to enlarge the remedy by mandamus. In that case stress was laid on the fact that the company was established by royal charter, which made it their duty to keep the register and insert the names of the proprietors, in which, it was said, the public are largely interested, If the courts here were inclined to enlarge the remedy, it could not be done in a case where the right is disputed, where no public interest is involved, where no reason is shown for a transfer of a specific and favorite thing, and where the remedy by action is fully adequate.

Judgment reversed.