Sinking Fund Commissioners of Philadelphia *v.*
Philadelphia et al., Appellants.

Argued September 29, 1936.   Before KEPHART, C. J.,
MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Joseph Sharfsin,* City Solicitor, with him *John P. Berry* and *Ernest Lowengrund,* Assistant City Solicitors, for petitioners.

*Henry S. Drinker, Jr.,* amicus curiæ.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 19, 1936:

The Commissioners of the Sinking Fund of Philadelphia instituted mandamus proceedings to compel the

payment of the sums due that fund on account of bond issues for the year 1935. A judgment was entered against the City in the sum of $7,667,015.04, which was directed to be paid in three separate installments. The judgment was appealed to this court and affirmed in *Sinking Fund Com. v. Phila.*, 320 Pa. 394. We ordered this sum to be forthwith paid. Of the amount due $1,000,000 has been paid. The city, through the Mayor and the City Council, in June of this year petitioned this court, asking us, in effect, to control or supervise the enforcement of our order by permitting its payment over a period of time. The chief arguments for relief are the inability to pay that year's sinking fund requirement from the revenues of the City, the paucity of tax payments and the disastrous effect of an increased tax levy. The Sinking Fund Commissioners joined in the prayer and agreed that unless modification were made it "would be disastrous in the highest degree to the interests of the City of Philadelphia and without benefit to the sinking funds of the City."

In considering the former appeal, this Court and the court below had before them all the contentions of the parties which bore on the merits of the problem. We there reviewed Article XV, Sec. 3, of the Constitution, requiring the creation of a Sinking Fund; Article IX, Sec. 10, as affected by the amendment to Section 8 of Article IX; Article XXVIII, Sec. 2, of the Charter Act, the contention that the Sinking Fund Commissioners were subordinate to City Council without a right to invoke the remedy sought, and that the acts of City Council were discretionary and in the absence of fraud the courts would not inquire into their exercise as affecting the amount necessary to be placed in the Sinking Fund. Other questions were suggested and this Court, after due consideration of all of them, affirmed the judgment of the court below.

That judgment was the result of a breach of contract and a neglect to comply with the constitutional man-

dates upon which rights were predicated. It has often been held that a judgment is not a contract nor the obligation of a contract but is a new obligation under which antecedent rights are to be enforced. See *Wehrman v. Moore,* 177 Iowa 542, 159 N. W. 218; *Morley v. Lake Shore Ry. Co.,* 146 U. S. 162; *Livingston v. Livingston,* 173 N. Y. 377, 66 N. E. 123; *Belford v. Woodward,* 158 Ill. 122, 41 N. E. 1097. The judgment concludes all controversial matters between the parties prior to its rendition and substitutes a sum of money based upon ascertained rights and duties. The contract rights and duties springing therefrom are merged in the final judgment— they gave it life. As they are the substantive elements from which the court received the power to enter it, it must follow that nothing can be done by modification of the judgment that destroys the underlying elements, otherwise relief by judgments would be tenuous. The end of judicial procedure based on altercations between members of society is the judgment and the means of enforcing it. The judgment there entered was final and conclusive of the sum due based on the litigated matters.

We do not intend nor are we asked to reduce or modify it. We are asked to supervise the compliance as to time. Enforcement, as stated, is just as vital to the successful litigant as the judgment. While a state may by law modify the remedy or means of enforcing obligations, it cannot so change, modify or reduce the remedy as to prejudice substantive rights that have accrued, nor may it pass a law that so modifies the judgment as to impair the rights inherent in the contractual obligations upon which that judgment was grounded. See *Breitenbach v. Bush,* 44 Pa. 313; *Penrose v. Erie Canal Co.,* 56 Pa. 46. Thus an act withdrawing a fund from the lien of an execution to the prejudice of a creditor was held invalid under the Federal Constitution *(Worthen v. Thomas,* 292 U. S. 426), as was the application of an artificial credit against a judgment at law in derogation of the obligation of the contract: *Beaver County B. & L.*

*Assn. v. Winowich,* 323 Pa. 483. Any statute which attempts to frustrate the obligation of contract and take away accrued substantive rights thereunder through the modification of the means of enforcing the judgment has been held an inarticulate legislative expression. The "impairment of obligations" clause of the constitution protects from legislative interference not only the contract but its obligations so far as they inhere in the judgment.

But the protection afforded by the constitution is against acts of the law-making bodies. How far may the courts go in the administration of law in controlling the enforcement of the judgment? The Federal Supreme Court has held that the clause, "No state shall . . . pass any . . . law impairing the obligation of contracts . . ." relates solely to the laws passed by a state and does not control decisions of the courts: *Kryger v. Wilson,* 242 U. S. 171; *Cleveland, etc., R. Co. v. Cleveland,* 235 U. S. 50; *Cross Lake Shooting, etc., Club v. La.,* 224 U. S. 632; and U. S. C. A., Const., Art. I, Sec. 10, Cl. 1, note 16, page 45. The constitution of our state contains a similar inhibition against impairment of the obligation of contracts: Article I, Sec. 17. It likewise affects only laws passed by the legislature and does not affect judicial decisions.[1] Therefore any action we may take as to the enforcement of a judgment can not run counter to either Article I, Sec. 10, of the Federal Constitution or Article I, Sec. 17, of our Constitution.

The due process clause differs, however, from the impairment clause. It reads: ". . . nor shall any *State* deprive any person of life, liberty, or property, without due process of law; . . ." Under the due process clause the word "State" is broad enough to include the

---

[1] The facts in *Columbia & Montour Electric Company v. The North Branch Transit Company,* 258 Pa. 447, render it clearly distinguishable and the law stated above is that generally recognized in the United States.

134

decision of courts.[2]   That which constitutes an impairment of the obligation of the contract may also constitute a deprivation of due process.   In both property rights may suffer.   Therefore no order can be made by a court in the enforcement of a judgment which would, in violation of "due process," take from a litigant substantive property rights—rights which may likewise be secured for him from legislative interference by the impairment of obligations clause of the Constitution.

We are not asked to invade the security procured through the judgment nor to reduce in the slightest its effectiveness for the purpose given; we are asked to suspend for a time its enforcement.   Has a court the power to grant relief in the enforcement of a judgment in mandamus to ameliorate the harsh exactions of strict enforcement which would be oppressive and burdensome and where no possible harm can come to the beneficiaries of the judgment?   The City for the year 1935 failed to meet the constitutional demand and breached its contract with the bondholders.   For the wrong that was done the judgment was entered.   There is no possibility to restore the parties to their original rights.   The year 1935 is passed.   We cannot undo the wrong, but we may repair the breach by compelling the sum to be paid that should have been paid.   There are no constitutional provisions or contractual stipulations providing a compul-

---

[2] "We have no doubt that, when the federal constitution said, 'Nor shall any *state* deprive any person of life, liberty or property without due process of law,' it included all functionaries of state government, judicial as well as political (*Scott v. McNeal*, 154 U. S. 34, 35; *Chicago, B. & Q. R. R. v. Chicago*, 166 U. S. 226), and the courts may not, through judicial decrees or judgments, violate the due process or equal protection clauses.   The state cannot, through legislation, take away a vested right secured by a final judgment (*Penna. v. Wheeling Bridge Co.*, 18 Howard 421; *McCullough v. Virginia*, 172 U. S. 102); neither may a court take away a vested right secured by a valid decree or judgment": *Ladner et al. v. Siegel (No. 4)*, 298 Pa. 487, 498; see also *Mooney v. Holohan*, 294 U. S. 103; *Palestine Tel. Co. v. Palestine*, 1 F. (2d) 349.

sory, express remedy for defaults. That condition must be treated by the courts or the legislature through appropriate action when it arises. The contract rights of the bondholders and the constitutional and statutory violations which formed the basis of the reparatory judgment being now merged therein, the manner in which that judgment may be enforced was left uncontrolled by the terms of the contract or by the provisions of the constitution. It follows that unless the form of relief sought violates some substantive right the prayer therefor can be granted.

Our power comes from statute and the inherent powers lodged in a court to control its process. In this State and in every State where the equitable powers are administered through common law forms, the court can control the enforcement of a judgment where such control does not violate constitutional inhibitions. We have held from time immemorial that judges in common law courts may stay execution for causes which are sufficient and that their orders will not be disturbed unless there is a clear abuse of discretion: *Augustine v. Augustine*, 291 Pa. 15; *Anstead v. Cook*, 291 Pa. 335. In equitable proceedings also the power of the courts is absolute over their own decrees: cf. *Totten v. Totten*, 299 Ill. 43; *Mootry v. Grayson*, 104 Fed. 613; *Cadotte v. Cadotte*, 120 Mich. 667; *Fulton Investment Co. v. Dorsey*, 220 Fed. 298. The consideration of an order in a mandamus proceeding is discretionary, and if the object sought to be attained is oppressive, the courts will refuse to entertain the proceeding: *Commonwealth v. Com'rs of the County of Philadelphia*, 1 Wh. 1; *Comth. v. Mitchell*, 2 P. & W. 517; *Birmingham Fire Ins. Co. v. Kuehneisen*, 92 Pa. 72; *Duncan Townsite Co. v. Lane*, 245 U. S. 308; *City of Asbury Park v. Christmas*, 78 Fed. (2d) 1003. If we do entertain it, then as we have discretion in acting originally in a given case, after we have entertained jurisdiction we have the same discretion as to the enforce-

ment of that judgment or decree. When the circumstances of enforcement present obvious difficulties, great hardship and unnecessary inconvenience we may permit the distribution of performance over a period of time: cf. *State ex rel. Gillespie v. County of Bay*, 112 Fla. 687. It is to be remembered that we do not attempt, when we withhold strict enforcement, to detract from the validity of the judgment even where oppressive, and, if the relief sought by the petitioning party would be of no avail, pleas for extension would be refused, for courts will not do a vain thing. Otherwise they fail in the performance of their functions.

What, then, are the circumstances which lead to the conclusion that the order is oppressive and that to withhold strict enforcement would not be harmful to those who are to be benefited by the judgment? It was stated and not denied that the result of strict enforcement will be to increase the tax rate 20 to 30 cents on each hundred dollar valuation. This court does not propose to compel an additional tax on a people already overtaxed unless the clear mandate of the law so directs. The petitioners state, "That all moneys estimated as being receivable by the City during the current year have been appropriated for the absolutely necessary and essential functions of carrying on the City government, and that no part of the expected revenue from taxation or other sources can be looked to to satisfy the balance of the decree and award, without crippling the City government to such an extent as to bring the municipal governmental operations to a complete standstill and cessation. That proposed and pending increased State and Federal taxation, among other reasons, make the levying of further local taxes impracticable, if not impossible, and render the imposition of further burdens of taxation upon the people of the City of Philadelphia an expedient which would entail difficulties of so pronounced a character as to make it a practical impossibility. To cut down or transfer

the appropriations of City revenue at this time would reduce the available balances for the operation of the City government to an extent which could have no other effect but the complete paralysis of the City government." These factors undoubtedly present very urgent reasons for extending the time for compliance with the judgment. Particularly is this true as many thousands are unable to pay their present tax levies and there is a severe penalty attached to non-payment. What is now burdensome should not be made more burdensome, where there is no real necessity for it. The security of the bondholders is not imperilled in the slightest. There are ample resources now in the sinking fund to protect them and deferring payment for a time will not militate against the value of the bonds outstanding. All that would be accomplished by enforcing strict performance would be that large sums of money would be placed in the sinking fund merely to make more secure what is already secure. If this were an ordinary proceeding at common law, a court would not hesitate to grant relief to a private debtor and we see no reason why it should not assist a municipality whose citizens are overharassed by taxation.[3]

---

[3] "Ordinarily a court will not interfere with the right of a creditor to collect his debt by whatsoever means the law allows, but 'the right of a court . . . to stay an execution (in a proper case) or to prevent one from issuing . . . has been frequently recognized and is common practice' ": *Augustine v. Augustine*, 291 Pa. 15, 18. Courts of equity likewise grant extensions of time for performance of their decrees where otherwise oppressive hardship will result and no benefit accrue to the other party: *Cadotte v. Cadotte*, 120 Mich. 667; *Fulton Investment Co. v. Dorsey*, 220 Fed. 298; *Mootry v. Grayson*, 104 Fed. 613; *Totten v. Totten*, 299 Ill. 43. So also the legislature may constitutionally extend the time for performance by delinquent debtors where the creditor is reasonably secured in the interim: see *Beaver County B. & L. Assn. v. Winowich*, 323 Pa. 483, and cases cited therein, at p. 486 et seq. See also 82 *U. of Pa. L. Rev.* 261.

We will not grant the prayer of the petition requesting leave to make periodic payments extending over a period of seven years, nor will we disturb, in any way, the judgment that was entered in this case, but since petitioners have stated they will pay $1,000,000 on February 1st, 1937, we will make no order at this time enforcing immediate performance of the decree.

We accordingly make the following order: The City will pay $1,000,000 on the judgment on February 1st, 1937; further disposition of the cause to be temporarily withheld.

CONCURRING OPINION BY MR. JUSTICE STERN:

In an opinion handed down on October 5, 1936, in the case of *Beaver County Building & Loan Association v. Winowich,* the writer sought to point out the distinction between laws impairing a contractual right and those providing merely for a temporary suspension of the remedies to enforce it. By the great weight of authority both in the Supreme Court of the United States and the state courts of final jurisdiction, even emergency conditions cannot justify an overriding of the constitutional clause prohibiting impairment of the obligation of contracts,[4]—a clause uniformly interpreted to invalidate state laws which alter substantive contractual rights or unreasonably cripple judicial processes provided for their vindication. Thus the legislation involved in the *Winowich* case impaired the rights of mortgage-bond creditors to obtain repayment of their loans as stipulated in their contracts, and, although the act was expressly limited in duration, its effect in the cases in which it actually operated, instead of being confined to the emergency period, was definitive and permanent.

As explained in the *Winowich* opinion, however, the

---

[4] Except where the law is justified as an exercise of the police power. See *Beaver County Building & Loan Association v. Winowich,* 323 Pa. 483, for illustrations and authorities.

courts have consistently upheld reasonable and guarded *stay* laws when these were called into being by reason of exceptional public conditions. The leading decision on this subject was in the *Minnesota Moratorium* case,[5] where it was held that a limited suspension of remedies is legal when aimed to meet an emergency situation, which may consist of a general economic depression as well as a physical catastrophe such as a flood or earthquake. When such relief is given the creditor suffers merely a delay, but he ultimately obtains, after the emergency is over, a complete realization of his rights as far as legal remedies can accomplish it.

In the present case, as the opinion of the Chief Justice states, the court has rendered a judgment and is not being asked, as by the act condemned in the *Winowich* decision, to reduce it in amount or to modify it in any manner. All that is requested is moratory relief,—temporary indulgence in the promptness of its enforcement. It is true that such relief, when heretofore sustained, has usually been granted by legislative action, but there is no established principle of law denying to a court the right to grant a stay by virtue of its inherent powers in the case of so grave and unusual an economic emergency. The persuasive facts set forth in the petition of the City of Philadelphia and admitted by the Commissioners of the Sinking Fund—and no bondholder has intervened to challenge them—indicate that if a court has power temporarily to delay the execution of its judgment this is peculiarly a case calling for its exercise. A decision refusing the petition of the City would not afford any needed protection to the holders of its bonds, but would be an example of strained formalism rather than a realistic interpretation of applicable principles.

I therefore concur in the opinion of the Court.

---

[5] *Home Building and Loan Association v. Blaisdell,* 290 U. S. 398.