603 A.2d 243

**CARROLL TOWNSHIP AUTHORITY et al., Appellants,**

v.

**MUNICIPAL AUTHORITY OF THE CITY OF MONONGAHELA and the City of Monongahela, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Jan. 29, 1992.

George M. Lynch, for appellant, Carroll Tp. Authority.

Herman J. Bigi, for appellant, The Township of Carroll.

Richard F. Rinaldo, for appellees.

Before McGINLEY, and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

The present action in mandamus is yet another battle in a long legal war between the Municipal Authority of the City of Monongahela (Mon Authority) and the City of Monongahela (City) on one side and the Township of Carroll and its supervisors and treasurer (Township) and the Carroll Township Authority and its members (Carroll Authority) on the other. The dispute arises out of a sewage treatment agreement among the parties signed on May 1, 1971 (1971 Agreement). On December 3, 1987, Judge Thomas J. Terputac of the Court of Common Pleas of Washington County (trial court) issued a final order after trial (1987 order), which determined that the Carroll Authority and the Township jointly and severally owed $727,164.74 under the 1971 Agreement and which ordered them to perform specifically under the terms of that contract. Mon Authority and the City filed a complaint in mandamus on December 19, 1989, seeking a writ ordering Carroll Authority to pay amounts due and owing pursuant to the 1987 order or, in the alternative, compelling the Township to levy a special tax sufficient to meet the obligation.

The 1971 Agreement, arrived at after approximately two years of negotiation, provided that Mon Authority would accept and transport sewage from most of the Township and treat it at Mon Authority's sewage treatment facility. The system in the City is of an older type that combines storm sewage and sanitary sewage, with a permitted capacity of 1,500,000 gallons per day (gpd). The Township and Carroll Authority proposed to deliver only sanitary sewage from its system, which was yet to be built. The 1971

Agreement permitted the Township and Carroll Authority to deliver a "contract load" of up to 700,000 gpd, nearly half the capacity of the facility, at an initial rate of $1.378 per 1000 gallons, and it provided also that Mon Authority could not stop the flow from the Township. To address concerns of the City and Mon Authority that their system could be swamped by overruns, the 1971 Agreement fixed a charge of $2.00 per 1000 gallons for the next 21,000 gallons over the contract load amount, and $10.00 per 1000 gallons beyond that. To address concerns of the Township and Carroll Authority that its sanitary sewage not be overmeasured after mixing with the combined flow in the Mon Authority system, the parties agreed that the flow from the Carroll Authority sewers would be metered at four vaults located at points where that sewage entered the Mon Authority system. Carroll Authority was to receive monthly statements of services rendered. The 1971 Agreement also provided for the periodic inspection of the metering systems, and calibration of the devices that recorded daily flow amounts, whenever they were found to be more than 2% inaccurate.

The Carroll Authority system was connected in 1978. The Township and Carroll Authority paid charges under the 1971 Agreement until 1981, although serious problems of inflow and infiltration of groundwater into the system were detected from the time it became operational.[1] In September of 1981 Carroll Authority unilaterally ceased paying charges for flows over the contract load of 700,000 gpd.

In January of 1982 Mon Authority and the City filed an action in assumpsit to collect amounts claimed to be due and owing for overrun charges. In August of 1983 Carroll Authority and the Township instituted an action against Mon Authority to set aside the 1971 Agreement, contending that the rates relating to overruns were not uniform and reasonable as required by Section 4B(h) of the Municipality

1. In 1983, average inflow and infiltration, including dry weather flows, exceeded design specifications by nine times; wet weather flows reached 44.5 times specifications.

Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 306B(h). Mon Authority counter-claimed, and the trial court consolidated the two civil actions.

After an extensive non-jury trial the trial court issued an opinion and two orders on June 11, 1987. Those orders (1) granted the relief requested in the complaint of the City and Mon Authority and ordered the Township and Carroll Authority to pay the $727,164.74 mentioned above for past due charges from September of 1981 through March 31, 1987, and (2) dismissed the complaint of Carroll Authority and the Township and ordered specific performance and directed payment of all rates and charges for sewage treatment service under the terms of the 1971 Agreement.[2] Following post-trial motions the court issued a final order on December 3, 1987, affirming the previous orders. On appeal Carroll Authority and the Township challenged the validity of the rates for overruns. This court affirmed the orders of the trial court. *Municipal Authority of the City of Monongahela v. Carroll Township Authority,* 123 Pa.Commonwealth Ct. 615, 555 A.2d 264 (1989). The Pennsylvania Supreme Court denied petitions for allowance of appeal. 524 Pa. 599, 601, 568 A.2d 1249, 1250 (1989).

Despite the affirmance of the trial court's orders by this court and the denial of allowance of appeal by our Supreme Court, the Township and Carroll Authority refused to pay the past due charges or to pay ongoing charges for overruns. On December 19, 1989, Mon Authority and the City commenced an action in mandamus to compel payment in compliance with court orders and the 1971 Agreement; they alleged that past due charges amounted to $1,301,495.68 as

2. The Decision and Order of the trial court of June 11, 1987, in the action filed by Carroll Authority against the City and Mon Authority, No. 442, August Term, 1983, provides in part:

B. Carroll Township Authority and The Township of Carroll shall specifically perform all obligations imposed on them as 'Customers' under the Agreement made as of May 1, 1971, including the prompt payment of all rates and charges for sewage treatment service as determined pursuant to that Agreement for the remainder of the term thereof.

of December 25, 1989. They also filed a motion for peremptory judgment. After arguments, the trial court entered an opinion and order on May 29, 1990, granting the motion for peremptory judgment and the issuance of a writ of mandamus to compel payment but directing the holding of a hearing "so that a fair and equitable allocation of the burden" of such payment could be made. Order of May 29, 1990, at 10; Reproduced Record (R.R.) at 118a. The Township and Carroll Authority filed a petition to open peremptory judgment on June 7, 1990, on which a hearing was set.[3]

After hearings the trial court denied the petition to open peremptory judgment by order of September 26, 1990. On October 1, 1990, the trial court issued a writ of mandamus directing Carroll Authority and the Township to pay current amounts under the 1971 Agreement and to pay past due amounts of $1,504,717.46, according to a specified schedule of payments over a period of eight years, a schedule to which Mon Authority and the City agreed. The Township and Carroll Authority appealed from both orders, and this court consolidated the appeals for argument and disposition. The trial court issued an opinion on November 26, 1990, further clarifying the reasons for the orders of September 26 and October 1, 1990.

On this appeal, Carroll Authority contends that the court erred in issuing the writ in that: (1) the order was based on insufficient proof of the amount owed, because certain of the charges were established only by an objected-to affidavit; (2) mandamus will not lie to compel enforcement of the obligations created by the 1987 judgment, because performing those obligations is more than a ministerial duty, and the order exceeded the scope of mandamus authority by specifying terms and amounts of payments. Also, both

---

**3.** The day before that hearing was to take place Carroll Authority filed a petition for bankruptcy, and the trial court rescheduled the hearing. The United States Bankruptcy Court for the Western District of Pennsylvania granted the motion to dismiss filed by the City and Mon Authority, concluding that Carroll Authority was not authorized under Pennsylvania Law to be a Chapter 9 debtor. Carroll Authority did not appeal. *In re Carroll Township Authority,* 119 B.R. 61 (Bankr.W.D.Pa. 1990).

Carroll Authority and the Township assert that the trial court misapplied the doctrines of collateral estoppel and/or res judicata in refusing to permit Carroll Authority's expert witness to testify as to alleged faulty design, installation, housing and equipment for metering the sewage flow from the Carroll Authority system.

### Propriety of Mandamus and Scope of Order

First we shall address the contention, tantamount to a demurrer, that mandamus will not lie to compel enforcement of a judgment entered against municipal defendants. In *Delaware River Port Authority v. Thornburgh*, 508 Pa. 11, 20, 493 A.2d 1351, 1355 (1985), our Supreme Court explained the nature of mandamus as follows:

> Mandamus will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law.... Further, this Court has stated that mandamus is proper to compel performance of legal duties, even where the existence and scope of such duties must be found and defined in the course of the mandamus action itself. (Citations omitted.) [4]

Carroll Authority advances the remarkable argument that "the existence of the judgment or judgments against [Carroll Authority] does not create a mandatory duty to pay that judgment. A municipal authority is under no more statutory legal duty to pay a judgment in a particular manner than a private citizen or individual." Brief for Appellant Carroll Township Authority at 16. Carroll Authority appears to conclude that, because the Pennsylvania Rules of Civil Procedure providing for execution of judg-

---

**4.** Our Supreme Court held in *Thornburgh* that where it was demonstrated that the Department of Transportation (DOT) had a duty under an interstate compact, which had the force and effect of statute, to construct a highway and bridge approaches, then DOT's duty was statutory rather than merely contractual, and DOT's discretion to perform was foreclosed. Mandamus lies to compel performance of such a mandatory duty.

ments specifically exempt judgments against the Commonwealth, a political subdivision or an authority, Pa.R.C.P. No. 3101(a), no procedure is available by which judgments against such bodies may be enforced, therefore payment is discretionary.

The Township is a township of the second class. Section 907 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65907, provides that where a township's debts exceed the tax collections for any year, the court, after ascertaining the amount,

> may, by a writ of mandamus, direct the township supervisors, by special taxation, to collect an amount sufficient to pay the same. If the amount of such indebtedness is so large as to render it inadvisable to collect the same in any one year taking into consideration other necessary taxation, the court may direct the same to be levied by annual instalments and may order such special taxes to be levied and collected during such successive years as may be required for payment of the same.

■ Our courts consistently have upheld the use of mandamus as a means to enforce a judgment against a party not subject to a writ of execution. *See, e.g., City of Pittsburgh v. Department of Transportation,* 490 Pa. 264, 416 A.2d 461 (1980) (Commonwealth Court did not err in assessing interest against state agency in mandamus action by city to collect payments due to city under order of the Pennsylvania Public Utility Commission); *Alberts v. Urban Redevelopment Authority of Pittsburgh,* 2 Pa.Commonwealth Ct. 167, 277 A.2d 361 (1971) (writ of mandamus is proper way for property owner who has been awarded damages in condemnation proceedings to compel payment of judgment). Although obvious public policy concerns require exemption of governmental entities from the forced sale of real and personal property and other remedies available under the Rules relating to execution, a judgment against such an entity is not a nullity. The duty to pay such a judgment is a mandatory duty, and it may be enforced in mandamus.

Carroll Authority also asserts that mandamus is not an appropriate remedy for compelling a general course of official conduct or a long series of continuous acts to be performed under varying conditions, citing *Russell v. Osser,* 437 Pa. 45, 261 A.2d 307 (1970), and *Dorris v. Lloyd (No. 1),* 375 Pa. 474, 100 A.2d 924, *cert. denied,* 347 U.S. 936, 74 S.Ct. 632, 98 L.Ed. 1086 (1954). Both of these cases involved election matters. In *Dorris* the court dismissed for lack of standing the mandamus action of a private citizen who sought to compel officials to comply with statutory duties regarding instructing election officers and investigating allegations of fraud. The court concluded that the individual had no interest different from that of the general public. The court went on to state that "mandamus will not lie to compel the pursuance of a general course of official conduct or performance of continuous duties . . . ." *Dorris,* 375 Pa. at 479, 100 A.2d at 927. In *Russell* the court modified an order in mandamus that directed election officers to take certain steps to correct alleged tampering with voting machines and to provide security during elections, both for the particular election in question and future elections. Relying on *Dorris,* the court struck all references in the order to future conduct.

■ As noted above, Section 907 of The Second Class Township Code expressly authorizes a court in a mandamus proceeding to order the assessment and collection of taxes in successive years for the payment of a debt. In *City of Pittsburgh v. Department of Transportation,* 490 Pa. 264, 269, 416 A.2d 461, 464 (1980), the court stated, "Although an action in mandamus lies on the law side of the court, equitable principles guide the issuance of the writ and any grant of incidental relief." [5] In *Sinking Fund Commissioners of Philadelphia v. Philadelphia,* 324 Pa. 129, 188 A. 314 (1936), a mandamus action was brought to enforce a very large judgment against the city for failure to make

5. *See also Francis v. Corleto,* 418 Pa. 417, 429, 211 A.2d 503, 509 (1965): "Although granted by the law side of the court, mandamus is essentially equitable in nature, requiring the application of equitable principles."

contractual payments on a bond issue, but both sides re-
quested that the court modify the directed payment sched-
ule. Granting the petition, the court stated, "When the
circumstances of enforcement present obvious difficulties,
great hardship and unnecessary inconvenience we may per-
mit the distribution of performance over a period of time."
*Sinking Fund Commissioners*, 324 Pa. at 136, 188 A. at
318.

In the present case, the trial court was acutely aware of
the potential for disruption and hardship if it ordered pay-
ment of the full amount of the past due charges at one
time. Exercising the essentially equitable nature of its
powers in mandamus, the trial court consulted with the
parties and arrived at a method of enforcement that the
court believed allocated the burden in a fair and equitable
manner. The order in this case applies to a limited period,
rather than to a completely unbounded period, as in *Dorris*
and *Russell*. We conclude that the trial court's directing
payment over a period of eight years, according to a sched-
ule with which Mon Authority and the City agreed, is not
excessive and is within the bounds of its authority in
mandamus.

### Preclusion of Evidence Concerning Design of the Meters

Both Carroll Authority and the Township argue that the
trial court misapplied the doctrines of res judicata (claim
preclusion) and collateral estoppel (issue preclusion). Many
times during the hearings on the petition to open peremptó-
ry judgment Carroll Authority and the Township attempted
to elicit testimony from their expert witness to support their
contention that the design and installation of the metering
systems were fundamentally flawed and that those systems
were not capable of measuring the flow accurately. The
trial court consistently sustained objections to the offered
testimony, ruling that such a contention could and should
have been raised earlier in the lengthy history of this
litigation, i.e., during the trial. The trial court did permit
testimony concerning the current state of the metering

systems and the methods by which contractually provided adjustments are made, to enable the Carroll Authority and the Township to attempt to prove that there was some change since the time of the 1987 judgment, due to maintenance or other factors. *See, e.g.,* Notes of Testimony (N.T.) September 12, 1990, at 114 and 137–39; R.R. 351a and 374a–76a. The trial court ultimately concluded that the evidence presented was not sufficient to establish that the meters currently are not measuring the flow accurately, primarily because the expert could not say whether the deficiencies he described result in the metering system's measuring incorrectly by more than the 2% tolerance provided as acceptable in the 1971 Agreement. Trial court opinion of November 26, 1990, at 15–17.

 Application of the doctrine of *claim* preclusion requires the concurrence of four elements. They are: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; (4) identity of the quality in the persons for or against whom the claim is made." *City of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh,* 522 Pa. 44, 54, 559 A.2d 896, 901 (1989). Where a final judgment is entered by a court of competent jurisdiction, a plaintiff's cause of action is merged in the judgment if he wins or barred if he loses, and the scope of the merger or bar includes not only matters that actually were litigated but also all matters that could have been litigated but were not. *Duquesne Light Co. v. Pittsburgh Railways Co.,* 413 Pa. 1, 194 A.2d 319 (1963), *cert. denied,* 377 U.S. 924, 84 S.Ct. 1221, 12 L.Ed.2d 215 (1964). However, where a subsequent action is brought to recover damages from injuries during a different period of time, the "thing sued for" generally is not the same, and claim preclusion does not apply.[6] Thus an unfavorable determination on a claim by homeowners that a

6. Although this principle does not apply to a cause of action subject to the rule against splitting of claims, the present case is not of that type, because of the ongoing apportionment of consideration on both sides and the clear intent of the parties that the contract not be "entire." *See Producers Coke Co. v. Hillman,* 243 Pa. 313, 90 A. 144 (1914).

municipal authority had not provided wholesome water from 1962 to 1964 did not, in itself, preclude a subsequent action challenging the quality of the water delivered in 1965. *Callery v. Municipal Authority of the Township of Blythe*, 432 Pa. 307, 243 A.2d 385 (1968).

*Issue* preclusion is "the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was *actually litigated* and which was *necessary* to the original judgment." *Clark v. Troutman*, 509 Pa. 336, 340, 502 A.2d 137, 139 (1985) (emphasis added). The Superior Court has stated:

> In collateral estoppel, as opposed to res judicata, 'the effect of the judgment is more limited. The judgment is conclusive between the parties in such a case as to the questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action.'

*Martin v. Poole*, 232 Pa.Superior Ct. 263, 271, 336 A.2d 363, 367 (1975) (quoting the Restatement of Judgments § 68 cmt. a (1942)).

In the opinion in support of the orders appealed from, the trial court states:

> Res judicata essentially bars the proposed defenses from being re-litigated for the following reasons: The same parties are before the Court; the identical issues—the plaintiffs want to recover their judgment and want to compel the defendants to perform specifically—are present; a final judgment had been entered; and the issues either have been litigated or should have been litigated in the prior suit. Nothing is new in the instant proceeding.

Trial court opinion of November 26, 1990, at 19. The court also states, with reference to testimony that the design of the measuring vaults is faulty, that parts of the measuring devices are corroded, that the calibrations are incorrect and

that the procedures by which the ultimate bills were prepared were improper:

> In our findings in the opinion dated June 11, 1987, at page 8, we referred to this matter, finding that the metered system was accurate and fair, having been properly administered and maintained. Even though the reference to the testimony of Bakewell may be erroneous, the Court addressed both the issue of maintenance and the issue of the accuracy of the metering system.

*Id.* at 20.[7]

Carroll Authority and the Township argue that claim preclusion does not apply here because the claim for damages from April 1, 1987, through August of 1990 represents a different claim—the facts relating to overruns in that period are not the same as the facts in the prior period.[8] Therefore, they say that the only basis for precluding their asserted defenses must be issue preclusion. However, they contend that that doctrine does not apply because these matters were not in fact litigated during the trial, despite the trial court's statement in the trial court opinion of June 11, 1987. Plaintiffs respond by asserting that these issues were litigated in the course of the trial in 1987, and that the trial court properly barred them from being litigated again in the current proceeding.

7. The trial court opinion of June 11, 1987, cited testimony of a Mr. Bakewell, N.T. February 26, 1987, at 133–35, in support of its statement that the metering system was fair and accurate and properly administered and maintained. As Carroll Authority pointed out, the cited testimony has nothing to do with these matters.

8. Carroll Authority and the Township appear to understand that, on the basis of claim preclusion, the original 1987 judgment of $727,-164.74 may not now be attacked on any grounds whatsoever. In proffering evidence relating to the allegedly faulty design and maintenance of the metering systems Carroll Authority and the Township are challenging only the amount claimed to be due since the date of the 1987 judgment. *See, e.g.,* N.T. September 12, 1990, at 9; R.R. 246a, remarks of Mr. Bigi, counsel for the Township: "The Court has found for the Carroll Authority the $700,000 back in 1987, plus from that point until now, we have no evidence of how we are being billed, nor the accuracy of the billing of the $800,000 that we are talking about now. That is what is in question. We are not going behind the $700,000...."

An examination of the materials from the trial record appended to the brief of Mon Authority and the City in support this contention reveals that the appropriateness of the design and the installation of the metering system were not litigated during the trial. Although there were descriptions of the meters and their operation, and a question as to the accuracy of the meters during one particular month, there was no general allegation that the meters cannot perform the function for which they are intended, nor any attempt to prove or disprove such an allegation. We agree with Carroll Authority and the Township that, for purposes of issue preclusion, questions concerning the design and installation of the metering system were not actually litigated and necessary to the 1987 determination.

However, to determine whether issue preclusion analysis applies in the present case, it is necessary to examine closely both the nature and effect of the 1987 order and the nature of the present proceeding in mandamus. The 1987 order did two things: (1) it established a judgment in favor of Mon Authority and the City for $727,164.74 for overrun charges as of March 31, 1987, and (2) it ordered Carroll Authority and the Township to comply with their obligations under the 1971 Agreement, including the obligation to make prompt payment of charges billed to them during the term of the contract. The second part of that order did not, and could not, amount to an adjudication of all possible contract disputes that might arise between the parties during the entire term of the contract. For example, if in 1992 the Carroll Authority and the Township disputed a particular monthly bill, claiming that it failed to reflect that Mon Authority had not accepted sewage during a week when the treatment facility was closed for maintenance, Mon Authority and the City could not rely on the 1987 order to claim that there was no right to dispute the billing. However, in view of the history of Carroll Authority and the Township of unilaterally ceasing to pay overrun charges and of their continuing not to pay such charges, the 1987 order did direct them to make prompt payments. The 1987 order did

not operate as bar to any claims that the Carroll Authority and the Township might raise concerning matters after the period to which the 1987 judgment was applicable. It did have the effect of ordering them to make payments first and then to raise any claims that they might have concerning the propriety of those charges.

■ Mon Authority and the City filed a complaint in mandamus because Carroll Authority and the Township, although they had exhausted their appeals, still refused to pay the 1987 judgment or to comply with the order to make prompt payments of any monthly overrun charges. Mandamus was the only method of enforcement available to Mon Authority and the City, and their objective was to enforce the 1987 order. Viewed from this perspective, the present proceeding is simply an *enforcement proceeding,* i.e., a later phase of the original action, rather than a "subsequent action" subject to claim preclusion and issue preclusion analyses.

Generally, our courts have held that defenses not raised in the original action may not be raised in an enforcement proceeding. In *Alberts v. Urban Redevelopment Authority of Pittsburgh,* noted above, private parties sought to enforce their eminent domain judgment, obtained pursuant to a consent agreement, in a mandamus action. The trial court denied the writ because the authority asserted that it had a defense to payment of the full detention monies. This court reversed, stating, "Once a judgment has been obtained against a municipality, a court will not hear defenses which should have been taken into consideration before judgment." *Alberts,* 2 Pa.Commonwealth at 172, 277 A.2d at 363. In *Department of Environmental Resources v. Wheeling–Pittsburgh Steel Corp.,* 473 Pa. 432, 375 A.2d 320, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977), a company did not appeal from an initial administrative order that it comply with regulations relating to air quality. In the later enforcement proceeding, the company sought to raise a constitutional challenge to the regulations. The court held that the company "was pre-

cluded from attacking the validity or content of either the order or the underlying regulations in the instant enforcement proceeding." *Id.*, 473 Pa. at 443, 375 A.2d at 325. In *Beiler v. Salisbury Township,* 79 Pa.Commonwealth Ct. 213, 468 A.2d 1189 (1983), property owners failed to appeal a denial of a building permit to the zoning hearing board, but they built a calf barn without a permit. In the township's action in equity to compel removal of the barn, the property owners advanced an interpretation of the ordinance that would permit the barn. This court held that, because of their failure to appeal the denial of the permit, "they are precluded from raising as defenses to the Township's equity action matters which they could have raised in an appeal to the Zoning Hearing Board." *Beiler,* 79 Pa. Commonwealth Ct. at 216, 468 A.2d at 1191.

In the particular circumstances of this case, Carroll Authority and the Township have refused to make any payments toward a judgment in spite of exhausting their appeals, and they have failed to comply with a court order to make contractually required payments. Recalling the essentially equitable nature of an action in mandamus, we believe that they are not permitted to raise contract defenses in the mandamus action brought to enforce the 1987 order of the trial court.[9] For this reason, the trial court's handling of evidentiary questions in the hearing on the petition to open peremptory judgment was not *under*inclusive but rather *over*inclusive. The amount of the 1987 judgment was known, and the amount of the overrun charges since then was subject to proof. Carroll Authority and the Township admitted that they had paid nothing toward either. In view of those facts, the trial court was in a position to enforce the 1987 order without providing Carroll Authority and the Township the opportunity to raise new defenses.

---

**9.** Because Carroll Authority and the Township were under a court-ordered duty to make prompt payments, not simply a contractual obligation, their challenges to the amounts billed are more in the nature of counterclaims than defenses. Counterclaims are prohibited in mandamus actions by Pa.R.C.P. No. 1096.

As discussed above, such enforcement does *not* preclude Carroll Authority and the Township from asserting, in an action of their own, any claims that they might have challenging the charges for any period after March 31, 1987, as excessive (although issue preclusion would bar them from relitigating matters that were fully litigated and necessary to the outcome of the first action). The determination of the trial court in the present case on the question of the propriety of the design and accuracy of the meters does not have preclusive effect because, under our analysis, that determination was not necessary to the outcome.

### Proof of Amount of Past Due Charges

Carroll Authority contends that the amount owed for overrun charges since March 31, 1987, was not properly proved. It asserts that the only proof was an affidavit by the General Manager of Mon Authority, who was not called to testify, which the trial court accepted at oral argument on the motion for peremptory judgment over objection. Carroll Authority argues that it and the Township were entitled to have the court require that Mon Authority prove, for each unpaid monthly billing, that sewage was treated, how the amount was determined, that the metering equipment was properly maintained and accurately measured the flow, and so on.

The trial court stated that the affidavit was not objected to and that the figures were undoubtedly correct unless Carroll Authority and the Township could show that after the date of the final decree in 1987 the metering system was so faulty that incorrect, higher levels of flow were metered. Trial Court Opinion of November 26, 1990 at 9. Mon Authority and the City also aver that there was no objection to the affidavit, but they assert that the question is irrelevant because the figures that the trial court actually relied upon in its order of October 1, 1990, were contained in the August 1990 monthly Sewage Statement provided by Mon Authority to Carroll Authority and admitted without objection. Plaintiffs' Exhibit 1; R.R. 793.

As that exhibit illustrates, the monthly Sewage Statement contains a listing of the past due charges up to the date of the statement. The General Manager of Carroll Authority, Raymond Colosimo, testified that he receives Mon Authority's monthly Sewage Statements, N.T. September 26, 1990, at 366; R.R. 607a, and that he checks the flows shown against the monthly and weekly flow records that he receives. *Id.* at 380; R.R. 621a. He stated further that he did not believe that he had seen an error in the flow records in the past two years. *Id.* We agree that Plaintiffs' Exhibit 1, properly introduced and supported by testimony, provides ample evidence to establish what the overrun charges are since the time of the 1987 judgment.

## Conclusion

The schedule of payments ordered by the trial court in the writ of mandamus is affirmed. The first $727,164.74 of such payments represent a judgment against Carroll Authority and the Township that is final beyond appeal and may not be challenged in any future action. The remainder of payments ordered shall be made in accordance with the schedule, although such amounts do not constitute a judgment. With this modification, we affirm the orders of the trial court.

## ORDER

AND NOW, this 29th day of January, 1992, the order of the Court of Common Pleas of Washington County at No. 89–5657, dated September 26, 1990, is affirmed. The writ of mandamus issued October 1, 1990, at the same number, is modified to reflect that the first $727,164.74 of the payments ordered in the writ represents payment of a judgment that is final beyond appeal, whereas the remainder of the payments ordered do not. With that modification, the writ of mandamus is affirmed.

SILVESTRI, Senior Judge, concurs in the result only.