**RYON REALTY COMPANY, Appellant,**

v.

**CITY OF POTTSVILLE.**

**RYON REALTY COMPANY,**

v.

**CITY OF POTTSVILLE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.

Decided Feb. 6, 1997.

Martin J. Cerullo, Pottsville, for appellant, Ryon Realty.

Edwin L. Stock, Reading, for appellee, City of Pottsville.

Before FRIEDMAN and FLAHERTY, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Ryon Realty Company (Ryon) appeals from the June 5, 1996 order of the Court of Common Pleas of Schuylkill County (trial court) directing the City of Pottsville (City) to pay Ryon the sum of $90,271.56, plus interest and costs, over a period of nineteen years for real estate taxes paid by Ryon on certain real property owned by the City. The City appeals from the trial court's July 23, 1996 order, which instructed the City to pay Ryon the sum of $14,238.18, plus interest and costs, by the year 2000 for real estate taxes paid by Ryon on certain real property owned by the City.

Ryon received three judgments against the City for taxes Ryon erroneously paid and also taxes Ryon repeatedly paid to prevent tax sales of the subject property.[1] When the City failed to satisfy these judgments, Ryon filed a Petition for Issuance of a Writ Commanding Payment. The City, in turn, filed a Petition to Strike and/or Open Judgment. On October 19, 1995, the trial court entered an order finding the City, as record owner and lessor, liable for the payment of all real estate taxes on the subject property and denied the City's Petitions to Strike and/or

---

1. Ryon began leasing the subject property in 1973 and, in 1983, conveyed certain other real property to the City in exchange for the City's conveyance of the subject property to Ryon by way of a "springing executory interest." In early 1984, the Schuylkill County Assessment Office placed the subject property on the taxable assessment rolls and erroneously designated Ryon as the owner of the subject property for purposes of real estate taxation. As a result, Ryon received tax bill from January 1, 1984 until sometime in 1988 when the Schuylkill County Assessment Office corrected its records by replacing Ryon's name with that of the City; however, after the corrections, the City failed to pay real estate taxes on the subject property, resulting in these taxes becoming delinquent. Accordingly, the subject property was, on several occasions, scheduled to be sold at tax sales; on each occasion, Ryon paid the taxes owed in order to stop the tax sale and protect its future ownership interest in the subject property and its interest under the lease. Ryon's judgments against the City reflected the amount of taxes it erroneously paid on the subject property.

Open Judgments. The City filed a Motion for Post–Trial Relief on October 30, 1995 to which Ryon filed a Reply. The trial court then issued an order on December 5, 1995, affirming the City's liability to Ryon in all respects, but holding that Ryon was time-barred from recouping taxes paid for years 1984–86. Ryon appealed that particular issue to the superior court.[2] Meanwhile, on March 19, 1996, the trial court entered an order granting Ryon's Petition for Issuance of a Writ Commanding Payment and directed the City to pay Ryon $12,018.31, plus interest and costs, in settlement of one of Ryon's three judgments against the City; the order further directed the parties to prepare proposed payment plans. On June 5, 1996, the trial court adopted the City's proposed payment plan and entered an order giving the City nineteen years to pay the three judgments.[3]

On June 17, 1996, the superior court affirmed the City's liability for the payment of taxes on the subject property and also reversed and remanded that portion of the trial court's order holding that Ryon was time-barred from recouping the $14,238.18 in taxes paid for the years 1984–86. Accordingly, the trial court entered an order on June 20, 1996, entering judgment in Ryon's favor in the amount of $14,238.18 and directing the parties, once again, to submit proposed payment plans. Subsequently, the trial court entered its July 24, 1996 order directing the City to pay Ryon according to Ryon's proposed plan, which requested payment of the $14,238.18, plus interest and costs, in four years.

## I. Ryon's Appeal

■ On appeal to this court,[4] Ryon argues that the trial court abused its discretion and/or committed an error of law by allowing the City nineteen years to repay the judgments. We agree. Initially, we note that payment of judgments against third class cities, such as the City here, are governed by section 6 of the Act of April 15, 1834, P.L. 537, *formerly* 16 P.S. § 8802, repealed by section 2(a) of the Act of April 28, 1978, P.L. 202, (emphasis added), which provides:

> If judgment shall be obtained against a county in any action or proceeding, the party entitled to the benefit of such judgment may have execution thereof as follows, and not otherwise, viz.: *It shall be lawful for the court in which such judgment shall be obtained,* or to which such judgment may be removed by transcript from a justice of the peace or alderman, *to issue thereon a writ commanding the commissioners of the county to cause the amount thereof, with the interest and costs, to be paid to the party entitled to the benefit of such judgment out of any moneys unappropriated of such county, or if there be no such moneys, out of the first monies that shall be received* for the use of such county, and enforce obedience to such writ by attachment.

16 P.S. § 8802.[5]

Ryon argues that, because this section directs that a municipality's debt be paid "out

---

**2.** Such an appeal was properly taken to the superior court because the matter was not within the statutorily defined jurisdiction of this court, *see* 42 Pa.C.S. §§ 761–764, and the superior court has residual jurisdiction. 42 Pa.C.S. § 742. This appeal, however, presents a question of the interpretation of a statute governing the affairs of a political subdivision and, thus, is within the jurisdiction of this court. 42 Pa.C.S. § 762(a)(4)(i)(A).

**3.** The City's proposed payment plan was limited to the amount represented by Judgment J–7–1996; however, because the City's liability for *all* monies owed to Ryon had been determined by the trial court, the payment order of June 5, 1996 set a schedule for all three judgments.

**4.** Where the trial court has heard the matter *de novo,* this court's scope of review is limited to

determining whether the trial court's decision is supported by substantial evidence, is in accordance with law, or whether the trial court abused its discretion. Section 754 of the Local Agency Law, 2 Pa.C.S. § 754; *see also Fosko v. Board of Assessment Appeals, Luzerne County,* 166 Pa.Cmwlth. 393, 646 A.2d 1275 (1994).

**5.** Pennsylvania Rule of Civil Procedure 3101(a), which excludes cities of the third class from the application of the Rules generally governing the enforcement of monetary judgments, provides:

> "[J]udgment" means a judgment, order, or decree requiring the payment of money entered in any court which is subject to these rules, including a final or interlocutory order for payment of costs, except a judgment against the Commonwealth, a political subdivision or a public authority. . . .

of any monies unappropriated ..., or if there be no such monies, out of the first monies that shall be received ... [,]" nineteen years was an impermissibly long period of repayment for the first three judgments.[6]

Ryon had requested the City be ordered to pay all three judgments to the extent of any receipts or budgetary surplus at the end of 1996 which exceeded the City's budgeted total revenue. Ryon also requested that, if there were no excess receipts or budgetary surplus in 1996, that the City be compelled to include the debt in its budget in 1997 and levy the necessary tax millage to satisfy the three judgments owed to Ryon. According to Ryon, the language of section 8802 requires Ryon's judgment to be paid more promptly than the trial court's order directs. In asserting that the City can afford repayment in less time, Ryon points to the testimony of the former City Administrator, who testified that, although City revenues had become "stagnant" and that it has been "very difficult" to balance the budget in recent years, he anticipated a positive change in the aftermath of updated property values as a result of a county-wide reassessment. Ryon also notes that the county can raise taxes to pay the judgment.

The City, on the other hand, disagrees that the nineteen-year repayment plan violates section 8802. According to the City, the trial court had broad discretion to determine a fair and equitable period for repayment and properly exercised that discretion based upon testimony establishing that immediate execution on the judgments would deprive the City of funds necessary to provide essential public services.

■ We must agree with Ryon. The words of section 8802 are clear: the debt the City owes to Ryon must be paid *"out of any monies unappropriated ..., or if there be no such monies, out of the first monies that shall be received. ..."* Although this language establishes no definite time period for payment of judgments, it clearly commands that as much as possible be done to pay off the debt in the shortest amount of time possible. When a municipality is preparing its budget, *all* liabilities, including debts such as this, should be considered, and steps should be taken to ensure that the debt is promptly paid.

■ Here, the nineteen-year repayment schedule was excessive. The trial court made no findings that nineteen years is the shortest time possible to pay off the City's $90,271.56 debt to Ryon; moreover, we do not believe the record could support such a finding. We are not unpersuaded by the City's arguments that *immediate* payment of the entire debt would be dangerously burdensome, if not impossible for the City. Moreover, even if the debt could not be *immediately* extinguished, the City is still required to pay it as soon as possible; nineteen years does not satisfy this requirement. We addressed this situation in *Carroll Town-*

---

Pa. R.C.P. No. 3101(a).

Although 16 P.S. § 8802 was repealed, Ryon maintains that it applies, nonetheless, because the statutory notes to section 8802 indicate that one must consult the Disposition Table preceding Title 42 to determine the disposition of the repealed statutory provision. The Disposition Table indicates that section 8802 is contained, or provided for, in 42 Pa.C.S. § 1722(a)(1), which is the general rule allowing for the practice, procedure and the conduct of all courts in the Commonwealth; this section also suspends statutes to the extent that they are inconsistent with any of the Rules described thereunder. The interpretive note to the section from which 42 Pa.C.S. § 1722(a)(1) was derived provides that, if no general rules are in effect with respect to the repealed statutes on the effective date of repeal, the practice and procedure provided in the repealed statutes shall continue in full force and effect as part of the common law until such general rules are promulgated. Because no rules or procedures for collecting on money judgments against third class cities have been promulgated since the repeal of section 8802, Ryon maintains that this section remains in effect and was properly the method Ryon used to enforce its judgments against the City. (*See* Ryon's brief at 13–16.) We agree with Ryon, as does the City.

6. In support of its argument, Ryon cites cases in which municipalities have been required to pay larger judgments in less time. *See Sinking Fund Commissioners of Philadelphia v. Philadelphia,* 324 Pa. 129, 188 A. 314 (1936) (city required to pay state fund $7,667,015.04 in three installments); *Carroll Township Auth. v. Municipal Authority of the City of Monongahela,* 145 Pa. Cmwlth. 273, 603 A.2d 243 (1992) (parties agreed to schedule which provided that township would pay city over $1,504,717.46 over a period of eight years).

*ship Auth. v. Municipal Authority of the City of Monongahela,* 145 Pa.Cmwlth. 273, 603 A.2d 243 (1992), where we stated:

> In *Sinking Fund Commissioners of Philadelphia v. Philadelphia,* 324 Pa. 129, 188 A. 314 (1936), a mandamus action was brought to enforce a very large judgment against the city for failure to make contractual payments on a bond issue, but both sides requested that the court modify the directed payment schedule. Granting the petition, the court stated, "When the circumstances of enforcement present obvious difficulties, great hardship and unnecessary inconvenience we may permit the distribution of performance over a period of time." *Sinking Fund Commissioners,* 324 Pa. at 136, 188 A. at 318.
>
> In the present case, the trial court was acutely aware of the potential for disruption and hardship if it ordered payment of the full amount of the past due charges at one time. Exercising the essentially equitable nature of its powers in mandamus, the trial court consulted with the parties and arrived at a method of enforcement that the court believed allocated the burden in a fair and equitable manner. . . . We conclude that the trial court's directing payment over a period of eight years, according to a schedule with which [both parties] agreed, is not excessive and is within the bounds of its authority in mandamus.

603 A.2d at 248.

Applying the same rationale here, we conclude that the nineteen-year repayment schedule is excessive and fails to allocate the burden of repayment in a fair and equitable manner. If the City here, like the city in *Carroll,* is unable to discharge its debt at one time, the trial court may establish a payment plan which alleviates obvious difficulties, great hardship and unnecessary inconve-

nience to the City while ensuring prompt repayment to Ryon.

Accordingly, we vacate the trial court's June 5, 1996 Order and remand this case to the trial court with directions to determine the shortest amount of time in which the City can pay its debt in accordance with section 8802.

## II. City's Appeal

■ The City argues that the trial court abused its discretion and/or committed an error of law by directing the City to repay $14,238.18 by the year 2000. In making this argument, the City essentially asserts only that, if this court determines that a remand to the trial court for reconsideration of the nineteen-year payment plan is appropriate, we should also remand for further review of the four-year payment plan. We disagree.

Because four years to repay the $14,238.18 is not so long so as to constitute a clear error of law or abuse of discretion by the trial court,[7] we affirm the trial court's July 24, 1996 order.

### ORDER

AND NOW, this *6th* day of *February,* 1997, we vacate the order of the Court of Common Pleas of Schuylkill County, dated June 5, 1996, and remand this case to the trial court for consideration of an appropriate payment schedule in accordance with the above opinion. We affirm the order of the Court of Common Pleas of Schuylkill County, dated July 24, 1996.

Jurisdiction relinquished.

---

**7.** The City had proposed to pay Ryon in equal yearly installments beginning in the year 1997 and extending over nineteen years, the same schedule the City proposed for the first three judgments. Ryon, on the other had, had requested that, to the extent the City's total receipts for 1996 exceeded the budgeted total of $4,553,-339.00, any excess receipts be paid over to Ryon. Further, Ryon requested that to the extent the

City realized a budgetary surplus at the end of 1996, any such surplus should be paid over to Ryon. If there were no surpluses or excess receipts, Ryon requested that the City be ordered to budget in each of the calendar years 1997-2000, one quarter of the balance due after any payments made in 1996, plus interest on the judgment at six percent per annum until the sum of $14,238.18 is paid in full.