**BOROUGH OF WIND GAP**

v.

**TEAMSTERS LOCAL 773 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1998.
Decided Aug. 11, 2000.
Reargument Denied Oct. 19, 2000.

---

Caren Litvin, Philadelphia, for appellant.

Alyssa Lopiano Reilly, Bangor, for appellee.

BEFORE: DOYLE, President Judge, COLINS, Judge, and MIRARCHI, Jr., Senior Judge.

DOYLE, President Judge.

Local 773 of the International Brotherhood of Teamsters (Local 773 or Union) appeals from an order of the Court of Common Pleas of Northampton County, which had set aside a writ of execution filed by Local 773 against the Borough of Wind Gap (Borough) because Local 773 did not follow the proper procedure for enforcing its judgment.

Local 773 is the bargaining representative for the Borough's municipal employees. In 1993, the Union learned that the Borough had hired several part-time employees to perform the job of one of its members, Marc Decker, who had been laid off by the Borough. Pursuant to the terms of the Collective Bargaining Agreement (CBA) then in place between Local 773 and the Borough, Local 773, on behalf of Decker, filed a grievance alleging that the Borough had violated the CBA by employing part-time workers to perform the work of a laid-off regular employee.[1]

Local 773 processed Decker's grievance to final and binding arbitration pursuant to the terms of the CBA. On March 25, 1994, an arbitrator sustained the grievance and awarded Decker back wages and benefits. The Borough appealed the arbitrator's decision to the Court of Common Pleas of Northampton County. The Court denied the Borough's petition to set aside the arbitration award in an order dated April 14, 1997, and on October 3, 1997, Common Pleas entered judgment in favor of Local 773 and against the Borough in the amount of $9,878.93.

---

1. Article VI of the CBA provides in relevant part that

[s]hould the Employer hire part-time or seasonal workers during the term of this Agreement, full time employees are guaranteed full time employment at not less than fourty [sic] (40) hours per week for fifty-two (52) weeks per year for the full term of the Agreement.

(Collective Bargaining Agreement, Article VI.)

Prior to the entry of judgment, but after the April 14, 1997 order of Common Pleas, the Borough, on August 4, 1997, adopted resolution 403 which imposed a per-capita tax in the Borough for the Borough's 1998 budget, to pay the Union's judgment. Resolution 403 established a five-year payment structure during which the Borough would pay Decker $2,150 per year for four years and $2,154.93 during the fifth year.[2]

However, because the Borough had not satisfied the judgment by the end of 1997, Local 773 filed a praecipe for a writ of execution on January 8, 1998. On January 26, 1998, the Borough filed a motion to set aside the writ of execution, alleging that it was immune from such writs by virtue of its status as a political subdivision of the Commonwealth. As such, the Borough argued that its immunity flowed from Pa. R.C.P. No. 3101(a), which provides as follows:

> [J]udgment means a judgment, order, or decree requiring the payment of money entered in any court which is subject to these rules, including a final or interlocutory order for payment of costs, **except a judgment against the Commonwealth, a political subdivision or a public authority** ...

Pa. R.C.P. No. 3101(a) (emphasis added).

On February 6, 1998, Common Pleas held a hearing on the Borough's motion. At the hearing, the Borough provided the Court and Local 773 with a copy of Resolution 403 and again asserted that it was immune from writs of execution pursuant to Pa. R.C.P. No. 3101(a). Local 773, citing this Court's opinion in *Ryon Realty Co. v. City of Pottsville*, 688 A.2d 797 (Pa. Cmwlth.1997), argued that Section 1 of the Act of April 2, 1860, P.L. 589, *as amended*, 53 P.S. § 49271, repealed by the Act of April 28, 1978, P.L. 202, permitted it to secure a writ of execution. That Section provided as follows:

> In all cases where judgments have been or shall be obtained against a borough within this commonwealth, like proceedings to enforce payment thereof out of the borough fund may be had as are provided by law for enforcing payment of judgments against townships; and the writ of execution to be issued in such cases shall be served upon the burgess, or treasurer, or secretary of the town council of the proper borough.

53 P.S. § 49271. Local 773 acknowledged that this section had been repealed, but it argued that, because no rules of procedure relating to the collection of money judgments against boroughs have been promulgated since the repeal of 53 P.S. § 49271, that section continues to be an applicable part of our common law.

On March 31, 1998, Common Pleas issued an order granting the Borough's petition to set aside the writ of execution.[3] In reaching this decision, Common Pleas concluded that, due to the repeal of 53 P.S. § 49271, the section applicable to the collection of judgments against a borough was Section 1302 of the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 46302, which provides, in relevant part, as follows:

> (a) The council of the borough shall have power, by ordinance, to levy and collect annually, a tax, not exceeding thirty mills for general borough purposes, unless the council by majority action shall, upon due cause shown by resolution, petition the court of common pleas, in which case the court may order a rate of not more than five mills additional to be levied ...

53 P.S. § 46302. Similarly, the Court noted that the Borough had the power to levy

---

2. Local 773 asserts that it was only informed of the existence of Resolution 403 on February 6, 1998, but the Borough maintains that the Ordinance was properly advertised and passed after receiving public comment in a public forum.

3. The Order was issued based upon the reasons stated in the Court's opinion which had been issued on March 16, 1998.

a special tax under Section 1303 of the Borough Code, 53 P.S. § 46303, which provides as follows:

> In addition to the levies provided for in the preceding section, when it shall be shown to the court that the corporate authorities refuse or neglect to levy a sufficient tax to pay the debts due by the borough, the court may, after ascertaining the amount of such indebtedness of the borough, direct a writ of mandamus to the proper officers of such borough to collect by special taxation an amount sufficient to pay the same in one or more annual instalments, as may be adjudged reasonable by said court, during such years as may be required for the payment of the same.

53 P.S. § 46303. Accordingly, Common Pleas concluded that Local 773's remedy was to petition Common Pleas to direct a writ of mandamus compelling the Borough to collect an amount sufficient to pay the judgment by means of a special levy. Common Pleas concluded that, although 53 P.S. § 49271 was repealed and not replaced by subsequent legislation, the two levy provisions were the sole means of enforcing a judgment against the Borough. Therefore, because Local 773 did not attempt to seek payment through the mechanisms of the levy provisions, *i.e.*, file a writ of mandamus, Common Pleas set aside the writ of execution. This appeal by Local 773 followed.

On appeal, Local 773 argues that Common Pleas erred by concluding that 53 P.S. § 49271, although repealed, does not con-

tinue to be in effect as part of the common law of Pennsylvania.

In *Ryon*, we examined a similar situation where an individual who had secured three judgments against the City of Pottsville, a third-class city, sought to enforce those judgments. The statute upon which Ryon relied, 16 P.S. § 8802,[4] like the provision upon which Local 773 now relies, had been repealed. Ryon, however, argued that, because no new rules were promulgated since the repeal of that provision, the provision existed as part of the common law of Pennsylvania. In support of this argument, Ryon noted that the statutory notes accompanying Section 8802 direct the reader to the Disposition Table accompanying Title 42 to determine whether the particular provision was encompassed by 42 Pa.C.S. § 1722(a)(1), which is the general rule allowing for the practice, procedure and conduct of all courts in the Commonwealth.[5] Therefore, Ryon argued, because the Disposition Table indicated that Section 8802 was subsumed by 42 Pa.C.S. § 1722(a)(1) and because no new general rules had been promulgated to facilitate the enforcement of judgments against third-class cities, the provision continued as part of the common law of Pennsylvania. We agreed with Ryon's argument and analyzed the case under Section 8802 governing the general authority of the Courts in the Commonwealth.

In the case presently before us, Local 773 argues that, although 53 P.S. § 49271 was repealed in 1978, no subsequent legis-

---

4. Section 6 of the Act of April 15, 1834, P.L. 537. *Repealed by* Section 2(a) of the Act of April 28, 1978, P.L. 202.

5. That Section provides as follows:

 a) **General rule.**— The governing authority [the Supreme Court] shall have the power to prescribe and modify general rules governing:

 (1) Practice, procedure and the conduct of all courts, district justices and all officers serving process or enforcing orders of any court or district justice and for admission to the bar and to practice law, and the administration of all courts

and the supervision of all officers of the judicial branch, if such rules are consistent with the Constitution of Pennsylvania and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or district justice, nor suspend nor alter any statute of limitation or repose. All statutes shall be suspended to the extent that they are inconsistent with rules prescribed under this paragraph.

42 Pa.C.S. § 1722(a)(1).

lation has been adopted to facilitate the collection of money judgments against a borough without which a judgment creditor would be without a remedy to collect the debt. The Borough, however, points out that *Ryon* involved the collection of a judgment against a third-class city, which is governed by a different Act of the General Assembly, and, therefore, *Ryon* is inapplicable to the present case. Although we agree with the Borough that *Ryon* addressed an identical issue in the context of a different type of political subdivision, *i.e.* third-class city instead of a borough, we nonetheless find the analysis set forth in *Ryon* to be instructive and persuasive. We would note in this respect that the General Assembly has enacted an entire Third Class City Code,[6] and an entire integrated Borough Code,[7] as well as First Class[8] and Second Class Township Codes.[9]

Although the Borough is correct that 53 P.S. §§ 46302 and 46303 provide a way for a Borough to raise revenue to pay a creditor, nothing in those sections provides a creditor with a remedy if the borough simply refuses to pay the debt. Therefore, it cannot be said that the General Assembly has promulgated a new mechanism to take the place of 53 P.S. § 49271. Moreover, the governing authority identified in Section 1722 of the Judicial Code, *i.e.,* the Supreme Court, has adopted provisions of the Rules of Civil Procedure for execution of judgments. *See* Pa. R.C.P. 3102 *et seq.* Accordingly, then, as in *Ryon,* the statutory notes accompanying 53 P.S. § 49271 refer the reader to Title 42 of the Pennsylvania Consolidated Statutes to determine whether this particular section has been subsumed by Title 42. The disposition table indicates that 53 P.S. § 49271 *has been* encompassed by Section 1722(a)(1) of the Judicial Code, 42 Pa.C.S. § 1722(a)(1), and, because no procedural rules have been adopted by the Supreme Court for

the collection of money judgments against boroughs, the same procedure as provided by the Act of April 2, 1860, P.L. 589, *as amended,* 53 P.S. § 49271, even though repealed, remains under the common law of this Commonwealth.

Therefore, we hold that 53 P.S. § 49271, although repealed, remains in effect as part of the common law of Pennsylvania because the General Assembly did not promulgate legislation to replace this mechanism for the enforcement of judgments against boroughs, and, accordingly, Common Pleas erred in setting aside the writ of execution on the basis that Local 773 erroneously filed a writ of execution instead of filing a writ of mandamus.

Reversed.

### *O R D E R*

**NOW,** August 11, 2000, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby reversed.

---

6. Act of June 3, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

7. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 45101–48501.

8. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101–58502.

9. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.