790 A.2d 308

**BOROUGH OF WIND GAP, Appellant,**

v.

**TEAMSTERS LOCAL 773 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 15, 2001.

Decided Feb. 21, 2002.

Alyssa Lopiano–Reilly, Leonard N. Zito, for Borough of Wind Gap.

Jeremy Edward Meyer, for Teamsters Local 773 of the International Brotherhood of Teamsters.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Chief Justice.

The question before this Court is whether a writ of execution will lie to enforce a money judgment against a borough. The Court of Common Pleas of Northhampton County found that such a writ was not the proper procedural tool for enforcing the judgment. The Commonwealth Court reversed, finding that the common law of Pennsylvania now incorporates the Act of April 2, 1860, P.L. 589, *as amended*, 53 P.S. § 49271, even though the court acknowledged that act had been repealed by the Act of April 28, 1978, 42 P.S. § 20001 *et*

*seq.* (Judicial Act Repealer Act). For the reasons that follow, we reverse the order of the Commonwealth Court.

On October 3, 1997, the Court of Common Pleas of North-hampton County entered judgment in favor of Teamsters Local 773 (Union). This judgment was the result of a grievance brought by the Union on behalf of Union member Marc Decker, under the collective bargaining agreement between the Union and the Borough. The Borough adopted a resolution on August 4, 1997, with the purpose of satisfying the judgment. That resolution imposed a per-capita tax which would pay the judgment over five years, in roughly equal annual installments. When the Borough did not satisfy the judgment by the end of 1997, the Union filed a praecipe for a writ of execution on January 8, 1998.

The Borough filed a motion to set aside the writ of execution on the grounds that, as a political subdivision of the Commonwealth, it was immune to such actions. We agree.

The Borough argues that the Commonwealth Court incorrectly held that Section 1 of the Act of April 2, 1860, P.L. 589, *as amended,* 53 P.S. § 49271, *repealed by* the Act of April 28, 1978, P.L. 202, remained in effect as part of Pennsylvania's common law. The court based this holding upon *Ryon Realty Co. v. City of Pottsville,* 688 A.2d 797 (Pa.Cmwlth.1997). In *Ryon,* the court determined that payment of judgments against a third class city was governed by Section 6 of the Act of April 15, 1834, P.L. 537, *formerly* 16 P.S. § 8802 *repealed by* section 2(a) of the Act of April 28, 1978, P.L. 202. The court supplied the following rationale for applying a repealed statute to the matter at hand:

Pennsylvania Rule of Civil Procedure 3101(a) which excludes cities of the third class from the application of the Rules generally governing the enforcement of monetary judgments, provides:

"[J]udgment" means a judgment, order, or decree requiring the payment of money entered in any court which is subject to these rules, including a final or interlocutory order for payment of costs, except a judgment against the

Commonwealth, a political subdivision or a public authority.....

Pa. R.C.P. No. 3101(a).

Although 16 P.S. § 8802 was repealed, Ryon maintains that it applies, nonetheless, because the statutory notes to section 8802 indicate that one must consult the Disposition Table preceding Title 42 to determine the disposition of the repealed statutory provision. The Disposition Table indicates that section 8802 is contained, or provided for, in 42 Pa.C.S. § 1722(a)(1), which is the general rule allowing for the practice, procedure and the conduct of all courts in the Commonwealth; this section also suspends statutes to the extent that they are inconsistent with any of the Rules described thereunder. The interpretive note to the section from which 42 Pa.C.S § 1722(a)(1) was derived provides that, if no general rules are in effect with respect to the repealed statutes on the effective date of repeal, the practice and procedure provided in the repealed statutes shall continue in full force and effect as part of the common law until such general rules are promulgated. **Because no rules or procedures for collecting on money judgments** against third class cities have been promulgated since the repeal of section 8802, Ryon maintains that this section remains in effect and was properly the method Ryon used to enforce it judgments against the City. (*See* Ryon's brief at 13–16.) We agree with Ryon, as does the City.

688 A.2d 797 at 799–80 n. 5 (emphasis added).

The procedure under the former Act of April 2, 1860, P.L. 589, § 1, was described as follows:

Thus, we must say that the proper procedure, and for that matter the only procedure, for enforcing judgments against boroughs is for the judgment creditor to obtain a writ from the court which rendered the judgment commanding the proper officers of the borough to pay the judgment out of any unappropriated moneys of the borough or, if there be no such moneys, out of the first moneys that shall be received for the use of such borough. This writ of execution

shall be served upon the burgess or treasurer or secretary of the town council of the proper borough.

*Kuza v. Borough of Shenandoah,* 9 Pa. D. & C.2d 465 (Pa. Quar. Sess. Schuylkill Co.1956). Other reported opinions on the matter from the era before the Act was repealed refer to the method of proper enforcement as a "writ of mandamus execution". *See Marlin v. Indiana Borough,* 61 Pa.Super. 519 (1915), *and see also Louden v. Juniata Borough,* 11 Pa. D. & C. 532 (Blair Co. Com. Pl. Ct.1928); *cf. Allen v. Dubois Borough,* 5 Pa. D. 585 (Clearfield Co. Com. Pl. Ct. 1894)(while writ authorized by the Act of 1860 is sometimes mistakenly called mandamus, it must conform to the commands required in the act). Each of these describes a method of enforcement which entails compelling a public official to perform a required duty of that officials office, *i.e.,* pay the judgment creditor the amount owed by the borough. In fact, a writ of execution under our civil rules provides a procedure for the sheriff to attach, levy, and sell real and personal property. *See* Pa. R.C.P. 3101 *et seq.* Prior to *Ryon,* the Commonwealth Court recognized that this raised a public policy concern stating:

[O]bvious public policy concerns require exemption of governmental entities from the forced sale of real and personal property and other remedies available under the Rule relating to execution, a judgment against such an entity is not a nullity. The duty to pay such a judgment is a mandatory duty, and it may be enforced in mandamus.

*Carroll Township Authority v. Municipal Authority of the City of Monongahela,* 145 Pa.Cmwlth. 273, 603 A.2d 243 (1992).

This Court examined and rejected alternative methods of compelling municipal officers to make payments at the turn of the nineteenth century. We explained:

The point which required most consideration, was, whether the case was of such a nature as called for a mandamus; and we think that it is, because the supervisors are public officers, directed by the act of assembly to pay such orders as are legally drawn by the justices, and because the surveyors [creditors] have no other specific remedy. It is

said that the supervisors may be indicted for neglect of duty. But if they were indicted and convicted, the orders might still be unpaid. It is said also that if they withhold payment without just cause, they are liable to an action. Granting that they are, it must be brought against them in their private capacity and there is no form of action against them, which, being carried to judgment, will authorize an execution to be levied upon the treasury.... Now it was to this treasury that the surveyors had a right to look....

*The Commonwealth v. Johnson and Felton,* 2 Binn 275 (Pa. 1810). Prior to the previous century we stated "[a] mandatory writ is the only means known by the law by which a municipal corporation can be compelled to pay a debt or perform a duty." *In re Sedgeley Avenue,* 88 Pa. 509, 511 (1879). The jurisprudence of this Commonwealth has been consistent, even during the life of the Act of 1860, that the remedy in this situation is to compel the appropriate municipal officer to perform the specific ministerial duty, *i.e.,* to make payment or to arrange for payment through the raising of funds. Allowing collection against a political subdivision of the Commonwealth pursuant to our modern understanding of execution is to change the very remedy that was available prior to the repeal of the act.

As the Commonwealth Court noted in *Ryon,* our rules for the enforcement of money judgments exempt a "judgment against the Commonwealth, a political subdivision or a public authority." Pa.R.C.P. 3101. As such, the judgment against the Borough may not be executed pursuant to Pa.R.C.P. 3102. We disagree with the Commonwealth Court's finding that this Court has failed to adopt procedural rules for collection of money judgments against a borough as our rules permit actions in mandamus to "compel performance of a public act or duty by a political subdivision of the Commonwealth...." Pa.R.C.P. 1094. As we can perceive no legal void which would compel adoption of a repealed statute as common law, we reverse the order of the Commonwealth Court and reinstate the order of the Court of Common Pleas of Northhampton County.

Justice EAKIN did not participate in the consideration or decision of this case.

Justice SAYLOR files a concurring opinion in which Justice NIGRO joins.

SAYLOR, Justice, concurring.

Although I concur in the result achieved by the majority, I note that the present civil procedural rules do not particularize the manner in which money judgments are to be collected from a political subdivision. Further, I do not believe that the rules pertaining to civil actions in mandamus were fashioned to govern executions on already existing money judgments, particularly as application of those rules would require the commencement of a separate, civil action. *See* P.R.C.P. Nos. 1091, 1093. *See generally Kamm v. Borough of Greentree*, 86 P.L.J. 403, 404 (C.P. Allegheny 1938)(Eagen, Musmanno, and Thompson, JJ.)(explaining that the procedure for executing on a judgment against a borough "is not the common law mandamus, but the statutory method of issuing execution upon judgments against municipalities[;][i]t is a judicial writ issued only after final judgment obtained against a municipal corporation"). Since in my view there are no applicable judicial procedural rules, I believe that there exists precisely the sort of void which the General Assembly intended to be filled pursuant to the savings clause of the Judiciary Act Repealer Act, 42 Pa.C.S. § 20003(b). I therefore agree with the Commonwealth Court that, pursuant to the savings clause, the "mandamus execution" procedure set forth in the Act of April 2, 1860, P.L. 589, § 1 (codified at 53 P.S. § 49271 (repealed 1978)), should be deemed to govern the Union's collection efforts.[1]

---

1. The former legislative provisions governing executions against boroughs incorporated the parallel provision pertaining to townships. *See id.* To collect a judgment against a township, the court in which such judgment was obtained could issue thereon a writ commanding the township commissioners or township supervisors to cause the amount thereof, with interest and costs, to be paid to the party entitled to the benefit of such judgment, out of any monies unappropriated of such township; or, if there were no such monies, of the first money that shall be received for the use of such township. *See* Act of July 14, 1917, No.

Here, however, the Union did not seek or request to collect its judgment in a manner consistent with this "mandamus execution" procedure (or the substantially similar mandamus procedure outlined by the trial court), but rather, filed an ordinary praecipe for a writ of execution directed to the Sheriff of Northampton County with a notice indicating that certain property may be held or taken to pay the judgment.[2] Obviously, the purpose of the former statute was to prevent such a levy against and potential execution sale of the property of a local governmental entity. Accordingly, I join the majority in disapproving the Union's present collection efforts.

Justice NIGRO joins this concurring opinion.

319, P.L. 840, § 1396 (codified at 53 P.S. § 18462 (repealed 1931)); *see also Kamm,* 86 P.L.J. at 404. The procedure did not require the commencement of a wholly independent civil action for mandamus as the majority appears to deem necessary.

**2.** The difficulty with the Commonwealth Court's opinion, in my view, is that it equates the ordinary writ of execution filed by the Union with the specialized "mandamus execution" writ called for by the formerly governing statute. *See Borough of Wind Gap v. Teamsters Local 773 of the Int'l Bhd. of Teamsters,* 759 A.2d 949, 953 (Pa.Cmwlth.2000)(holding that "Common Pleas erred in setting aside the writ of execution on the basis that [the Union] erroneously filed a writ of execution instead of filing a writ of mandamus").